IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 05781 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jessica J.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 12, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 15, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initials of her last name.

# BACKGROUND

## I.    Procedural History

On September 10, 2019, Plaintiff filed a claim for DIB, alleging disability since November 1, 2017, due to severe migraines, severe vertigo, type 1 diabetes insulin dependent, and inoperable brain bleed with severe side effects. [Dkt. 11-1, R. 219-20, 242.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 109, 134-35.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone on February 23, 2021. [R. 40-97.] Plaintiff personally appeared by telephone and testified at the hearing and was represented by counsel. [R. 42, 47-80.] Vocational expert ("VE") Tobey Andre also testified. [R. 80-96.] On March 24, 2021, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 15-35.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

## II.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 15-35.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2017, through her date last insured of September 30, 2019. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus type 1 insulin dependent; diabetic neuropathy; diabetic retinopathy; and migraine headaches status post traumatic brain injury. [R. 17-18.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 20.] Before step four, the ALJ

determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could never climb ladders, ropes, or scaffolds; she could frequently climb ramps and stairs and stoop; she could occasionally balance; she must avoid concentrated exposure to extreme cold, extreme heat, and wetness; she must never be around unprotected heights; she could never operate commercial vehicles and dangerous heavy moving machinery; she is able to avoid ordinary hazards in the workplace, such as boxes on the floor and doors ajar; and she is able to perform duties involving occasional near acuity. [R. 20-33.] At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. [R. 33.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 33-35.]

## **DISCUSSION**

**I.       Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the

claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th

4

Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II.     Analysis**

Plaintiff argues that the ALJ committed reversible error by: (1) improperly evaluating Plaintiff's mental RFC, (2) improperly evaluating Plaintiff's subjective symptoms, and (3) improperly cherry-picking evidence to support her RFC finding. [Dkt. 13, Pl.'s Mem. at 7-16.] After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's mental impairments in crafting the RFC. [Pl.'s Mem. at 9-12.] Plaintiff contends both that the ALJ failed to properly evaluate Plaintiff's mental impairments at step two and then also failed to incorporate into the RFC even the mild limitation she found that Plaintiff had in concentrating, persisting, or maintaining pace ("CPP"). [*Id.*] The Court agrees with Plaintiff that the ALJ erred by failing to incorporate into the RFC Plaintiff's mild CPP limitation and not explaining why that mild limitation produced no functional restrictions that needed to be included in the RFC. This error requires remand.

The ALJ's sole evaluation of Plaintiff's mental limitations came at step two, where the ALJ concluded that Plaintiff's major depressive disorder and posttraumatic stress disorder ("PTSD") were not severe impairments. [R. 18.] In doing so, the ALJ generally reviewed some of the evidence in the record as to each area of mental functioning but did not cite any specific

5

records or medical opinion evidence. [*Id.*] For example, as to the ALJ's consideration of Plaintiff's limitations as to concentration, persistence, or pace, the following is the entirety of the ALJ's discussion:

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant had mild limitation. The claimant stated that her ability to pay attention changed with pain. She reported that she did not finish what she started. She reported that she could follow spoken instructions well when she was not in pain. The claimant stated that she followed written instructions if she could see them (7E). Treatment notes do not document significant issues with distractibility, concentration, paying attention or maintaining pace (3F, 5F, 7F, 9F, 10F, 11F, 12F and 13F).

[R. 19.] Before this evaluation of Plaintiff's mental functioning, the ALJ stated that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's RFC]." [R. 18.] At the end of the ALJ's step two discussion of Plaintiff's mental impairments, however, the ALJ expressly noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

[R. 19-20.] Notwithstanding the ALJ's statement that her step two discussion was "not a residual functional capacity assessment," the ALJ did not further evaluate Plaintiff's mental limitations throughout the rest of her opinion. Despite the ALJ's acknowledgment that the RFC required "a more detailed assessment," [R. 20], the ALJ's RFC analysis did not include one. Rather, the ALJ's only reference to Plaintiff's mental impairments in that analysis came as she briefly discussed the state agency physician consultants' opinions from May and August 2020 concerning Plaintiff's mental limitations. Both psychologists concluded that although there was sufficient evidence to determine that Plaintiff had "a mood disorder" prior to her date last insured

of September 30, 2019, there was insufficient evidence prior to the date last insured to assess the severity of Plaintiff's mental impairments and their impact on her mental functioning. [R. 102-03, 114-15, 126-27.] The ALJ found these opinions not persuasive because evidence received after their opinions "supports that [Plaintiff] does have medically determinable mental impairments, although they are considered to be non-severe, as discussed above." [R. 32.] Further, although the ALJ affirmatively stated at step two that she "considered all of [Plaintiff's medically determinable impairments" in determining the RFC, the ALJ never gave an explanation as to how those impairments, whether alone or in combination with Plaintiff's physical impairments, impacted the RFC. [R. 18.]

Here, the ALJ failed to properly account in the RFC for the mild limitation that she found in CPP. It is axiomatic that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is true even if mental impairments "are non-severe and the limitations that they impose on the claimant's capabilities are minor." *Thomas G. v. Kijakazi*, No. 20-CV-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022) (collecting cases). Time and time again, courts in this District have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four. *See e.g., Thomas G.*, 2022 WL 4234967, at 5 (Cummings, J.); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *5 (N.D. Ill. July 14, 2022) (Cummings, J.); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022) (Harjani, J.); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (Schenkier, J.); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *4 (N.D. Ill. Mar. 11, 2019) (Rowland, J.); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL

7

3352657, at *3 (N.D. Ill. July 9, 2018) (Gilbert, J.). The ALJ here did what this line of cases indicates is impermissible: the ALJ determined at step two that Plaintiff had non-severe mental impairments that warranted a mild CPP limitation, but the ALJ failed to discuss or even mention Plaintiff's mild mental limitation in crafting the RFC.

The Commissioner focuses on Plaintiff's argument that, at step two, the ALJ improperly evaluated each of the four areas of mental functioning and erroneously found that Plaintiff had no severe mental impairments. [Dkt. 16, Def.'s Mem. at 1-5.] The Court is troubled by the analysis at step two—which contained only high-level references to Plaintiff's subjective reports and treatment notes without citation to any particular records—because the lack of specificity makes it difficult to know whether and to what extent the medical record supports the ALJ's conclusions that Plaintiff had a mild limitation in CPP and no limitations in the remaining areas. [*See* R. 18-19.] But the Court need not—and does not—determine whether the ALJ erred in this respect.

Even assuming that the ALJ adequately analyzed the extent of Plaintiff's mental limitations at step two, the ALJ's step two discussion cannot justify the RFC because the ALJ expressly stated that that discussion was not an RFC assessment and that the RFC "require[d] a more detailed assessment." [R. 19-20.] It is true that ALJ opinions must be read holistically, and the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a proper basis for remand. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("[The sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically."). But in this instance, where the ALJ expressly noted that her step two analysis did not constitute an RFC assessment, and that an RFC assessment required a more detailed analysis, "the Court

8

will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022) (same). The ALJ was obligated to explain either how the RFC "incorporate[d] restrictions caused by Claimant's mild mental limitations," or, alternatively, why "the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC." *Viviana R. v. Kijakazi*, No. 19-CV-07419, 2022 WL 3354840, at *5 (N.D. Ill. Aug. 12, 2022). The ALJ's opinion contains no such explanation.

"Even if a mild limitation finding at step two does not necessarily equate to any RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Kathy A.*, 2022 WL 2758001, at *4 (cleaned up). It is the ALJ's failure to conduct such an evaluation—and not the ALJ's failure to find any limitations—that requires remand. "On remand, the ALJ must either incorporate into the RFC non-exertional limitations that account for [Plaintiff's] mild limitation[] in" CPP "*or* explain why such limitations are unnecessary." *Id.* at *5.

Because the ALJ's failure to adequately evaluate Plaintiff's mental limitations vis a vis the RFC requires remand, the Court need not address Plaintiff's remaining arguments. The Administration should not, however, construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [12] is granted, and the Commissioner's cross-motion for summary judgment [15] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 5/9/23

BETH W. JANTZ
United States Magistrate Judge